RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

KYLE RAYMOND MILLIS,

        *Petitioner-Appellant,*

    *v.*

RANDEE REWERTS, Warden,

        *Respondent-Appellee.*

No. 25-1606

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:25-cv-00530—Paul Lewis Maloney, District Judge.

Argued: April 30, 2026

Decided and Filed: July 9, 2026

Before: KETHLEDGE, NALBANDIAN, and RITZ, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Sophia Attie, Maya Chamra, NEW YORK UNIVERSITY, New York, New York, for Appellant. Nicholas Johnson, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Sophia Attie, Maya Chamra, Daniel Harawa, Adam Murphy, NEW YORK UNIVERSITY, New York, New York, for Appellant. Nicholas Johnson, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

RITZ, Circuit Judge. Kyle Millis was convicted of state crimes in Michigan. He pursued state postconviction relief, which tolled his one-year deadline for filing a federal habeas petition.

But Millis received conflicting letters from the Michigan Supreme Court about the status of his postconviction petition, with the last one notifying him that his appeal had been "accepted for filing" and was "complete." Five months later, Millis checked the status of his case, only to learn that the state had in fact dismissed his petition as untimely. By then, his window to timely file a federal habeas petition had closed.

The district court denied Millis's subsequent habeas petition as untimely, finding that it was plainly apparent that Millis was not entitled to equitable tolling of the statute of limitations. Millis now appeals. Because it is not plainly apparent from Millis's petition that he is not entitled to relief, we reverse the district court and remand for further proceedings.

I.

A.

On May 13, 2019, Millis pled no contest to four counts of criminal sexual conduct in Kent County, Michigan Circuit Court. Millis alleges that before entering his plea, "an unknown stand-in lawyer" told Millis—without Millis's lawyer present—that the state had offered him a plea deal whereby he would serve 12 years in prison. RE 1, Habeas Pet., PageID 7. Millis says he would have accepted the offer had his counsel "provid[ed] any material advice regarding the offer." *Id.* Instead, the court ultimately sentenced Millis to 35 to 65 years' imprisonment.

Millis filed a direct appeal, which the Michigan Court of Appeals denied on February 13, 2020. The Michigan Supreme Court denied review on February 2, 2021. Millis had until July 2, 2021, to seek certiorari from the United States Supreme Court, after which, under 28 U.S.C. § 2244(d)(1)(A), his one-year window to file a habeas petition started. Because he did not seek certiorari, Millis's federal habeas petition was due on July 5, 2022, accounting for weekends and holidays.

B.

On March 29, 2022, Millis moved for state postconviction relief in the Kent County Circuit Court. His motion statutorily tolled the deadline for filing a federal habeas petition, leaving 95 days remaining. 28 U.S.C. § 2244(d)(2). The circuit court denied his motion on

March 12, 2024.  Millis appealed to the Michigan Court of Appeals, which denied his appeal on August 20, 2024.  Millis's deadline to file for leave to appeal to the Michigan Supreme Court was 56 days later, on October 15, 2024.  If he failed to file for leave to appeal, his federal habeas petition clock would resume with 95 days remaining.

In October 2024, Millis submitted his application for leave to appeal to the Michigan Supreme Court.  Because he was incarcerated and proceeding pro se, Millis delivered the application, along with a legal mail form that recorded the date of submission and receipt, to prison officials who mailed it on his behalf.  The legal mail form instructed that both the date-submitted and date-received sections of the form "Must Be Completed In [the] Authorizing Staff Member's Presence," and the form would be denied if Millis "refused to sign & date [it] in [the] staff member's presence."  RE 1-2, Legal Mail Form, PageID 23.  Millis's legal mail form listed October 11, 2024, as the "Date & Time Submitted," but October 22, 2024, as the "Date & Time Received by Authorizing Staff."  *Id.* at PageID 23.  Millis alleged that this discrepancy exists because he submitted the application to prison officials on October 11, 2024, but it "laid on [the officer's] desk until October 22, 2024."  RE 1, Habeas Pet., PageID 8-9.

Around October 22, 2024, Millis says, he filed a duplicate application "out of an abundance of caution," this time through the electronic filing program available to prisoners.  CA6 R. 30, Reply Br., at 10 n.4.  Millis received a letter from the Michigan Supreme Court, dated October 22, 2024, informing him that his application was late.  Millis suggests that this letter—the first of many letters he received, as described below—was in response to his electronically filed application.

Then, Millis received a second letter from the Michigan Supreme Court, dated October 28, 2024.  This letter, from Julianne Claydon, the Assistant Clerk of the Michigan Supreme Court, informed Millis that his application could not be filed "because it [was] received beyond the rule-prescribed time limitation," and "was previously rejected on 10/22/2024 when the application was submitted through the Prisoner Efiling Program for the same reason."  RE 1-1, Oct. 28, 2024, Ltr., PageID 19.  Claydon requested that Millis "[s]ubmit a copy of the legal mail form from the facility within 21 days for this office to review."  *Id.*  Millis sent the court a copy of the legal mail form, which the Michigan Supreme Court "accepted" as "proof of

submission" on November 14, 2024. *People v. Millis*, No. 167789, Dkt. Entry Dated Nov. 14, 2024 (Mich. 2024), https://www.courts.michigan.gov/c/courts/coa/case/370630 (last visited July 9, 2026). The same day, the docket was updated to show that Millis's application for leave to appeal was "[t]imely under [Michigan Court Rule] 1.112." *Id.*

Next, Millis received a third letter, dated November 20, 2024. In this letter, Michigan Supreme Court Clerk Larry Royster informed Millis that the court had administratively dismissed his application for leave to appeal as untimely. Royster acknowledged that Millis's application was docketed the prior week "by [his] assistant clerk based on [Millis's] assertion that the prison mailing receipt showed that [Millis] submitted it to a prison official for mailing on October 11." RE 1-3, Nov. 20, 2024, Ltr., PageID 25. But after his "office investigated the matter further and spoke with a prison official about the mailing receipt," Royster concluded that Millis had "backdated the application" and that the entry for "Date & Time Received by Authorizing Staff," October 22, 2024, "reflect[ed] the true date on which the prison official received the application from [Millis] for mailing." *Id.* (citation modified). Counsel for the government was not copied on this letter.

The next day, November 21, Royster sent Millis a fourth letter with yet another conflicting update on his application. In this letter, Royster stated that Millis's application for leave to appeal was "accepted for filing" and advised "the prosecuting attorney," who was copied on the letter, "that [Millis's] filing [was] complete." RE 1-1, Nov. 21, 2024, Ltr., PageID 20.

Five months later, Millis wrote to the Michigan Supreme Court requesting an update on the status of his case. On April 21, 2025, the clerk's office replied, informing Millis that the November 21, 2024, letter, which seemingly accepted Millis's case for appeal, was "generated in error" and that his case "was, in fact, dismissed on November 20." RE 1-2, Apr. 21, 2025, Ltr., PageID 22.

Because the Michigan Supreme Court administratively dismissed Millis's application for leave to appeal as untimely, Millis's statutory habeas clock had resumed on October 16, 2024, the day after the leave to appeal deadline, with 95 days remaining. So, by the time Millis

received the April 21, 2025, letter informing him that his Michigan Supreme Court appeal had in fact been dismissed, Millis's time to file his federal habeas petition had expired.

C.

On May 2, 2025—within two weeks of the April 21 letter—Millis filed a pro se habeas petition in federal district court. A magistrate judge recommended summary dismissal under Rule 4 of the Rules Governing § 2254 Cases, which requires district courts to dismiss habeas petitions when "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." The magistrate judge reasoned that Millis had until October 15, 2024, to appeal to the Michigan Supreme Court but failed to do so, making his habeas petition due on January 20, 2025.

Although the magistrate judge recognized that Millis received the November 21, 2024, letter confirming that his appeal had been accepted, he concluded that the November 20, 2024, letter dismissing Millis's application was controlling. Alternatively, the magistrate judge suggested that Millis "could have filed his § 2254 petition with this Court before the Michigan Supreme Court ruled upon any application for leave to appeal." RE 4, Magistrate Op., PageID 38. The magistrate judge ordered Millis to show cause "why the petition should not be dismissed as untimely." RE 5, Order to Show Cause, PageID 42.

In response, Millis (still proceeding pro se) argued that the clock should be equitably tolled because the November 21, 2024, letter was "absolutely clear" that his application was timely. RE 6, Show Cause Br., PageID 45. Millis did not serve the government with his petition or response, and the government did not file an appearance. A few weeks later, the district court found that Millis failed to show cause and dismissed his habeas petition as untimely under Rule 4. The district court concluded that Millis was not entitled to equitable tolling because he failed to pursue his rights diligently, "wait[ing] until four months had passed" to inquire about the status of his appeal after receiving "two conflicting decisions by the Michigan Supreme Court, issued within one day of each other." RE 8, Slip Op., PageID 64-65. The court reasoned that "[a]ny diligent petitioner who received the two notices that [Millis] did would surely have

reached out to the Michigan Supreme Court to receive clarification well before [Millis] did in April of 2025." *Id.* at PageID 65.

The district court granted Millis a certificate of appealability as to Millis's equitable tolling claim, recognizing "[r]easonable jurists could find the Court's conclusion . . . debatable." *Id.* at PageID 67. Millis timely appealed. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## II.

"[W]here the facts are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, we apply the *de novo* standard of review to a district court's refusal to apply the doctrine of equitable tolling; in all other cases, we apply the abuse of discretion standard." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citation modified). Here, the parties do not dispute the district court's material factual findings. Indeed, the district court denied Millis's request for equitable tolling without considering the timeliness of Millis's Michigan Supreme Court application. And Millis concedes that the Michigan Supreme Court found his application was untimely and that he received its November 20 order dismissing his appeal. Because no material facts are in dispute, we review de novo the district court's refusal to equitably toll Millis's petition.

## III.

The district court dismissed Millis's petition under Rule 4, which is appropriate only where a petition is "so plainly meritless that a court need not consider a state response, the state record, or any other evidence." *Pillow v. Burton*, 852 F. App'x 986, 990 (6th Cir. 2021) (citation modified). Because Millis has demonstrated that his arguments regarding equitable tolling "are sufficiently weighty to warrant a response from the state," we remand for further proceedings. *Id.* at 991.

### A.

"A petitioner is entitled to equitable tolling" of the one-year habeas limitations period "if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation modified). The petitioner bears the burden of showing his entitlement to tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Petitioners are required to show "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653 (citation modified). This is a "fact-intensive inquiry" that eschews "mechanical rules." *Id.* at 650, 654 (citation modified). Nonetheless, "the doctrine of equitable tolling is used sparingly by federal courts." *Robertson*, 624 F.3d at 784. In evaluating a petitioner's diligence, courts often consider how closely petitioners monitor the status of their appeals and how they respond to extrinsic errors. *See Holland*, 560 U.S. at 653 (granting equitable tolling where petitioner filed pro se habeas petition after learning limitations clock had expired due to attorney's "failings"); *Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002) (granting equitable tolling where petitioner waited nine months before asking for a case update).

Here, the dispute over Millis's diligence centers on one primary question: At what point should Millis have known that his Michigan Supreme Court application was dismissed, thereby starting his habeas clock? The government does not dispute that Millis quickly filed his habeas petition after the final, April 21, 2025, letter from the Michigan Supreme Court informing him his application was dismissed as untimely. The government nonetheless suggests that Millis was not diligent because he should have uncovered the Michigan Supreme Court clerk's error and realized that his application had been rejected.

But—at least on the record as it stands—Millis has a credible argument as to equitable tolling, such that the district court should not have dismissed his petition under Rule 4. Indeed, up until the final April 21, 2025 letter, Millis's correspondence with the clerk's office could have led a person of reasonable diligence to believe that his appeal had been properly docketed and would be addressed in due course. Consider the sequence of events. When the clerk's office initially rejected Millis's application on October 22, 2024, an assistant clerk explained why and offered Millis an opportunity to substantiate the application's timely October 11, 2024, submission date. Fewer than three weeks later, Millis submitted his legal mail form, and on November 14, 2024, the clerk's office updated the docket to reflect that his "proof of submission" was "accepted" and his application was "[t]imely under MCR 1.112." *People v.*

*Millis*, No. 167789, Dkt. Entry Dated Nov. 14, 2024 (Mich. 2024), https://www.courts.michigan.gov/c/courts/coa/case/370630 (last visited July 9, 2026). At this point, Millis could have reasonably believed the October 22 rejection notice was extinguished by the November 14 docket entry accepting his claim.

True, Millis then got another letter, dated November 20, stating that his application had been dismissed. But this letter could reasonably be understood as extinguished by the next day's letter, which explicitly stated that Millis's application had been "accepted for filing." Unlike Royster's November 20 letter, the November 21 letter was provided to counsel for the government and "the prosecuting attorney [was] advised that [Millis's] filing [was] complete." RE 1-1, Nov. 21, 2024, Ltr., PageID 20. At this point, Millis had received two messages from the clerk's office informing him that his application was late (the October 22 and 28 letters, the latter of which included a request for information that kept the possibility of acceptance open). But these letters were at least arguably superseded by the clerk's November 14 correspondence informing Millis that his application was accepted, the November 20 communication from Royster denying his application, and the November 21 letter from the clerk's office seemingly superseding the correspondence from the previous day.

Given the clerk's office's pattern of sua sponte updating Millis on his application status as it considered new information, it was not necessarily unreasonable for Millis to believe that the conflicting information was a series of corrections from the clerk's office, that the last-in-time letter he received was the operative one, and that the office would continue to correct itself as necessary. An alternative conclusion on this set of facts would place the onus on Millis (and petitioners in similar situations) to contact the clerk's office after each status update to ask "are you sure?" Put another way, it would unreasonably saddle petitioners in Millis's situation with the burden of ensuring court communications are correct, rather than placing the burden where it belongs: on the courts.

The parties do not present any cases that are directly on point, but the examples that they cite tilt in favor of Millis. Our decision in *Miller*, for instance, is instructive. There, the petitioner appealed his conviction to the Ohio Supreme Court. 305 F.3d at 492. Shortly after, he also sought to reopen his appeal, on ineffective assistance of counsel grounds, in the Ohio Court

of Appeals. *Id.* at 492-93. The Ohio Court of Appeals denied the application, but the petitioner did not receive a copy of the order; instead, he learned several months later that his application had been denied when he filed a motion asking the court to rule on his application. *Id.* at 493, 496. We found that Miller had acted diligently and accordingly tolled the limitations period. *Id.* at 497. Similarly to Miller, Millis likewise learned that his application was in fact denied five months later, only after he proactively asked the Michigan Supreme Court for an update on his case.

The government argues the facts here more closely resemble those of *United States v. Petty*, 530 F.3d 361 (5th Cir. 2008) (per curiam). There, the Fifth Circuit affirmed petitioner's sentence and conviction on direct appeal on April 15, 2004. *Id.* at 363. To confirm the date his appeal became final, the petitioner contacted the assistant clerk of the district court (not the Fifth Circuit), who erroneously told him his direct appeal was affirmed on May 7, 2004 (the date the mandate issued). *Id.* After Petty untimely filed his habeas petition, he sought equitable tolling because he relied on the assistant clerk's advice. *Id.* at 365. The court found that petitioner did not act diligently because the "ambiguous, secondhand advice he received from an assistant clerk" in a different court contradicted the information he received from the Fifth Circuit and his own attorney. *Id.* at 366-67. The facts alleged here are different: Millis, a pro se petitioner, received multiple, conflicting communications from the clerk's office of the Michigan Supreme Court, the last of which informed him (while also notifying the government) that his application had been accepted. Millis did not ignore the advice of his counsel or rely on informal advice from another court.

The government also points to another non-binding case, *United States v. Wheaten*, 826 F.3d 843 (5th Cir. 2016), to argue that Millis "should have elected to err on the side of caution and abide by the earlier of the two possible deadlines." *Id.* at 853 (citation modified). But unlike Millis, the petitioner in *Wheaten* was represented by counsel who erroneously submitted his habeas petition late due to "a lack of knowledge of the law." *Id.* (citation modified). Millis, in contrast, has alleged that he was incorrectly informed that his petition had been accepted by the clerk's office, whose responsibility it was to inform him of the status of his petition.

Finally, the government argues Millis should have submitted a protective petition before his limitations period expired. The government is correct that "[a] prisoner seeking state postconviction relief might avoid this predicament . . . by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace*, 544 U.S. at 416. But although this is one way to demonstrate diligence, the government has not identified any case *requiring* a petitioner to file a protective petition to demonstrate diligence. And indeed, if that were the rule, it would result in "a flood of protective filings in the federal district courts," which would "increase, not reduce, delays in the federal system." *Id.* at 429 (Stevens, J., dissenting).

B.

Millis also has a colorable argument, on this record, that extraordinary circumstances kept him from timely filing his petition. To determine whether a petitioner faced an extraordinary circumstance, courts consider whether "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson*, 624 F.3d at 783 (citation modified). "[E]quitable tolling might well be appropriate" where "the petitioner is affirmatively misled, either by the court or by the State." *Pliler v. Ford*, 542 U.S. 225, 235 (2004) (O'Connor, J., concurring).

Here, the Michigan Supreme Court's confusing communications could arguably amount to extraordinary circumstances beyond Millis's control. To review, Millis received:

- a notice dated October 22 from the Michigan Supreme Court that his application was not timely;

- a letter dated October 28 from Claydon also noting that his application was not timely, but providing an opportunity to substantiate an earlier filing date;

- a letter dated November 14 confirming his application was accepted as timely (arguably extinguishing the effect of the earlier notices);

- a letter dated November 20 from Royster accusing Millis of backdating his application; and

- a final letter dated November 21 seemingly accepting Millis's application.

And when, fewer than five months later, Millis contacted the Michigan Supreme Court for a status update on his application and learned it was not actually accepted as timely, he filed his habeas petition twelve days later. The quick turnaround of his habeas petition filing suggests that he would not have "sat on his rights" if he had not been potentially misled by the clerk's office. *Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011).

*Miller* is again instructive. There, the state court failed to inform the petitioner that his motion to reopen his appeal was denied, and the petitioner only learned of the error after he sought a case update several months later. *Miller*, 305 F.3d at 496. We found that the circumstances warranted equitable tolling. *Id.* at 497; *see generally Coppage v. McKune*, 534 F.3d 1279, 1281-82 (10th Cir. 2008) (order) (excusing prisoner from checking status of state postconviction motion during period when clerk assured prisoner that court would not act).

The government argues that the November 21 letter does not constitute extraordinary circumstances because if Millis had acted diligently, he would have learned that it was sent erroneously. But again, for the reasons discussed above, and given this particular set of circumstances, we decline to place on Millis the responsibility to independently confirm the accuracy of the November 21 letter. In any event, Millis has shown that his arguments were "not so plainly meritless that a court need not consider a state response." *Pillow*, 852 F. App'x at 990 (citation modified).

IV.

It may well be, after further development of the record, that Millis's arguments as to equitable tolling ultimately fail. But based on the facts before us, it is not plainly apparent from Millis's petition that he is not entitled to equitable tolling. We therefore reverse the district court's order dismissing Millis's appeal under Rule 4. Because the government was not served with Millis's habeas petition and did not have the opportunity to respond or add to the record, we remand for further proceedings.